```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X
                                     :
JOHN COOK,                           :
                Plaintiff,           :       11-cv-8624(KTD)
                                     :
          -v-                        :       MEMORANDUM & ORDER
                                     :
NATIONAL ARCHIVES AND RECORDS        :
ADMINISTRATION,                      :
                Defendant.           :
                                     :
------------------------------------ X
```

**KEVIN T. DUFFY**
**UNITED STATES DISTRICT JUDGE**

Plaintiff John Cook, a political reporter for Gawker Media, requested documents from the National Archives and Records Administration ("NARA" or "the government") pursuant to the Freedom of Information Act ("FOIA") relating to research requests made on behalf of former President George W. Bush and former Vice President Dick Cheney. NARA denied Mr. Cook's request in part, citing the Presidential Records Act and FOIA Exemption 6 as its reasons for withholding certain information. Mr. Cook initiated this lawsuit to challenge NARA's determination and the parties have cross-moved for summary judgment. For the reasons discussed below, Plaintiff's motion is DENIED and the government's motion is GRANTED.

## BACKGROUND

The Presidential Records Act ("PRA"), 44 U.S.C. §§ 2201-07 (2012), was passed in 1978 in the wake of Watergate to establish

1

"the public ownership of records created by future presidents and their staffs in the course of discharging their official duties" and "procedures governing the preservation and public availability of these records at the end of a Presidential administration." H.R. Rep. No. 95-1487, at 2 (1978). Prior to the Nixon Administration, Presidential records were generally viewed as the President's personal property. See Jonathan Turley, Presidential Papers and Popular Government: The Convergence of Constitutional and Property Theory in Claims of Ownership and Control of Presidential Records, 88 Cornell L. Rev. 651, 657-67 (2003) (discussing the history of access to presidential records).

The PRA makes public "Presidential records," which are defined as "any documentary materials relating to the political activities of the President or members of his staff, but only if such activities relate to or have a direct effect upon the carrying out of constitutional, statutory, or other official or ceremonial duties of the President." 44 U.S.C. § 2201(2)(A) (2012). The PRA explicitly does not encompass a President's personal records. See 44 U.S.C. § 2201(2)(B)(iii) (2012) ("The term 'Presidential records' . . . does not include any documentary materials that are . . . (ii) personal records . . . ."). It tasks NARA's chief officer, the Archivist of the United States, with "responsibility for the custody, control,

2

and preservation of, and access to, the Presidential records . . .." 44 U.S.C. § 2203(f)(1) (2012).

The PRA places two restrictions on public access to Presidential records: (i) a five-year time period during which an administration's files are made available only for archival purposes, see 44 U.S.C. § 2204(b)(2)(A) (2012), and (ii) a period of up to 12 years during which access is restricted for documents in six enumerated categories designated by the President before he leaves office. See 44 U.S.C. § 2204(a) (2012). Former officials of the relevant Administration are permitted to access the documents during the restricted periods, and they may designate representatives to access the documents on their behalf. 42 U.S.C. § 2205(3) (2012). The incumbent President, the judiciary, and Members of Congress are also permitted early access to the restricted documents for government business. 44 U.S.C. § 2205(2) (2012). To access these documents, officials or their designees must make a request to NARA. See Robinson Decl. ¶ 17. Collectively, NARA refers to these requests made by or on behalf of current and former officials as "special access requests." Id. ¶ 10. These special access requests "reveal the identity of the requester and the substance of what the requester seeks."[1] Def.'s Mem.

---

[1] More specifically, "[s]pecial access requests generally may include, research on behalf of the former President, former Vice President, and former First Lady for their memoirs; research for specific documents, including for

3

Law in Supp. Mot. Summ. J. at 5. NARA maintains records of special access requests.

On October 21, 2010, Plaintiff John Cook submitted a FOIA request to NARA requesting the agency's documentation of:

- "all requests for access to records received by the George W. Bush Presidential Library since February 1, 2009";
- "all requests for access to the records of former Vice President Dick Cheney received by NARA staff since February 1, 2009"; and
- all correspondence regarding those requests.

Compl. Ex. 1.

NARA responded on December 1, 2010, indicating that it would disclose FOIA requests for access to Presidential records made by the general public, but that it was categorically withholding the special access requests. See Compl. Ex. 2. NARA indicated that it treats special access requests as "researcher reference requests," which, in its view, are nondisclosable under FOIA Exemption 6, 5 U.S.C. § 552(b)(6) (2012) ("Exemption 6"). Exemption 6 protects the disclosure of information that would "constitute a clearly unwarranted invasion of personal privacy." Id. NARA also explained that "FOIA requesters are not subject to the same right to privacy as researchers." Compl. Ex. 2.

---

scholarly publications; requests for copies of textual and audiovisual materials to be sent to the permanent facility's museum design firm; as well as requests from individuals requesting copies of their photographs taken with the former President or Vice President." Robinson Decl. ¶ 15.

4

Mr. Cook appealed, see Compl. Ex. 3, and upon reconsideration NARA retracted its decision to withhold the requests made by the incumbent President, the judiciary, and Members of Congress on the basis that those officials do not have a personal privacy interest in the information sought as required by Exemption 6, since they are only permitted access to the records for government business. See 44 U.S.C. § 2205(2) (2012); Compl. Ex. 4. NARA maintained its position, however, that former President Bush and Vice President Cheney's requests for records from their own Administration are protected by Exemption 6. See Compl. Ex. 4.

Mr. Cook filed this lawsuit on November 29, 2011. Mr. Cook, who is a political reporter for Gawker Media, has offered two public interest justifications for seeking this information: (i) "[T]o gain insight into the way in which the former President and Vice President have chosen to shape the public's perception of their time in office, and to provide this insight to the public through online news stories," Compl. ¶ 5, and (ii) to "shed light on how NARA is administering the PRA." Pl.'s Memo. Law in Supp. Mot. Summ. J. at 1.

The parties have agreed by stipulation that the issues in this case are narrowed to the FOIA requests for (1) special access requests to NARA by former President Bush, former Vice President Cheney, and their designated representatives, and (2)

NARA's responses. See Dkt. No. 6. The parties have cross-moved for summary judgment.

## ANALYSIS

### I. Standard of Review

FOIA cases are generally, and most appropriately, resolved on summary judgment. See Bloomberg L.P. v. Board of Governors of the Fed. Reserve Sys., 649 F. Supp. 2d 262, 271 (S.D.N.Y. 2009). Summary judgment is appropriate where "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"In ruling on a motion for summary judgment, a court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party." McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). "Inferences and burdens of proof on cross-motions for summary judgment are the same as those for a unilateral summary judgment motion." Ferrigno v. U.S. Dep't of Homeland Sec., No. 09 Civ. 5878, 2011 WL 1345168, at *3 (S.D.N.Y. Mar. 29, 2011) (citing Straube v. Florida Union Free Sch. Dist., 801 F. Supp. 1164, 1174 (S.D.N.Y. 1992). "[E]ach cross-movant must present sufficient evidence to satisfy its burden of proof on all material facts." U.S. Underwriters Ins. Co. v. Roka LLC, No. 99 Civ. 10136, 2000 WL 1473607, at *3

6

(S.D.N.Y. Sept. 29, 2000).

The agency asserting the exemption — here, NARA — bears the burden of justifying nondisclosure. Wilner v. Nat'l Sec. Agency, 592 F.3d 60, 69 (2d Cir. 2009). "The agency's decision that the information is exempt from disclosure receives no deference; accordingly, the district court decides de novo whether the agency has sustained its burden." Bloomberg, L.P. v. Board of Governors of the Fed. Reserve Sys., 601 F.3d 143, 147 (2d Cir. 2010).

## II. FOIA Exemption 6

FOIA requires federal agencies to make certain information available to the public and sets forth the methods by which the public can request the information. See generally 5 U.S.C. § 522 (2012). FOIA was enacted to "open agency action to the light of public scrutiny." U.S. Dep't of Justice v. Reporter's Comm. for Freedom of the Press, 489 U.S. 749, 772 (1989) (citing Dep't of Air Force v. Rose, 425 U.S. 352, 372 (1976)). There are, however, nine categories of information that are exempt from disclosure under FOIA. See 5 U.S.C. § 522(b) (2012).

Exemption 6 of FOIA — the exemption the government is asserting here — permits an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6) (2012). "Exemption 6 is intended to

7

'protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information.'" Wood v. FBI, 432 F.3d 78, 86 (2d Cir. 2005) (citing U.S. Dep't of State v. Washington Post Co., 456 U.S. 595, 599 (1982)).

To determine whether information is protected from disclosure under Exemption 6, courts undertake a two-part inquiry. See Wood, 432 F.3d at 86. First, the Court must "determine whether the personal information is contained in a file similar to a medical or personnel file." Id. Second, the Court must "balance the public's need for the information against the individual's privacy interest to determine whether the disclosure of the names would constitute a clearly unwarranted invasion of personal privacy." Wood, 432 F.3d at 86 (internal citations omitted). If the information sought is not a personnel, medical, or similar file, the Court need not engage in the balancing inquiry. See, e.g., Families for Freedom v. U.S. Customs and Border Prot., 837 F. Supp. 2d 287, 301 (S.D.N.Y. 2011).

**A. The Special Access Requests are 'Similar Files.'**

Since the special access requests are not medical or personnel files, they are only exempt from disclosure under Exemption 6 if they constitute 'similar files.' See 5 U.S.C. § 552(b)(6) (2012). The Supreme Court has interpreted the term

'similar files' broadly to include any "detailed Government records on an individual which can be identified as applying to that individual." Washington Post, 456 U.S. at 602 (protecting from disclosure under FOIA Exemption 6 documents indicating whether two Iranian nationals held valid United States passports); see Wood 432 F.3d at 86 ("[W]e ask whether the records at issue are likely to contain the type of personal information that would be in a medical or personnel file."). As the Supreme Court has observed, "The House and Senate Reports, although not defining the phrase 'similar files,' suggest that Congress' primary purpose in enacting Exemption 6 was to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." Washington Post, 456 U.S. at 599.

Courts have considered records that contain information such as "place of birth, date of birth, date of marriage, employment history, and comparable data" as 'similar files' for the first step of the Exemption 6 analysis. Washington Post, 456 U.S. at 600. Documents containing marital status and names of personnel's spouses are also 'similar files.' See Simpson v. Vance, 648 F.2d 10, 17 (D.C. Cir. 1980) (marital status and names of spouses of foreign-service personnel were properly withheld under Exemption 6), abrogated on other grounds by Washington Post, 456 U.S. 595. Likewise, an agency's

investigative files that likely contain identifying information about (i) the subject of an investigation or (ii) third parties such as witnesses constitute 'similar files.'  See Wood, 432 F.3d at 87 ("highly detailed" records containing "personal information about the subjects of the investigation" - FBI agents accused of filing false affidavits for arrest warrants - and "private information about other individuals, particularly witnesses" were 'similar files' for Exemption 6 analysis); Perlman v. U.S. Dep't of Justice, 312 F.3d 100, 106 (2d Cir. 2002) (report of investigation involving improper conduct by agency official was a 'similar file' because it was a "detailed Government record" containing identifying information about the subject of the investigation), aff'd on rehearing, 380 F.3d 110 (2d Cir. 2004).

In contrast, inter-agency emails — even ones that included the sender's name, position, department, and phone number — are not 'similar files' entitled to protection under Exemption 6. See Families for Freedom, 837 F. Supp. 2d at 301.  "[M]undane interoffice communications that do not contain any detailed personal information . . . can in no way be construed as similar to personnel or medical files." Id.; see also VoteHemp, Inc. v. DEA, 567 F. Supp. 2d 1, 15 (D.D.C. 2004) (redacted names of DEA employees who authored or received documents are not 'similar

10

files,' but names and addresses of third parties contained in documents constitute 'similar files').

Courts determining whether a file is 'similar' to a medical or personnel file have thus drawn a line between documents that contain, on the one hand, personal information about (i) third parties who are not agency personnel or (ii) agency personnel who are subjects of an investigation, and, on the other hand, (iii) information pertaining to agency personnel who are going about their normal work duties. The former two are 'similar files' while the latter is not. This application is consistent with FOIA's dual objectives of permitting citizens to know "what their government is up to," Dep't of Justice v. Reporter's Comm. for Freedom of Press, 489 U.S. 749, 773 (1989), while at the same time protecting the privacy of citizens whose personal information unwittingly turns up in agency documents.

Here, NARA has identified approximately 1,000 responsive 'special access requests,' see Robinson Decl. ¶ 19, that "reveal the identity of the requester and the subject of what the requester seeks." Def.'s Mem. Law in Supp. Mot. Summ. J. at 5; see also Robinson Decl. ¶ 15. However, the government has not provided specific details on the contents of any particular document.[2] Regardless, the description the government has

---

[2] Typically in FOIA cases the government is required to provide a Vaughn index to support its assertion of a FOIA exemption, which should "describe with reasonable specificity the nature of the documents at issue and the

11

provided is sufficient for the Court to conclude that the records at issue here are 'similar files' under Exemption 6 since they are "detailed Government records on an individual which can be identified as applying to that individual." Washington Post, 456 U.S. at 602. Because the research requests contain the names and potentially the contact information of the researchers who have been designated by the former President and Vice President, the records that Mr. Cook requests can be identified as applying to those researchers, who are not NARA agency officials. Cf. Families for Freedom, 837 F. Supp. 2d at 301. In addition, because the researchers are acting on former President George W. Bush and former Vice President Dick Cheney's behalf, the records that Mr. Cook requests can be identified as applying to the former President and Vice President. The records are detailed in the sense that they comprise approximately 1,000 pages of research requests made pertaining to the former President and former Vice President's time in office. Ultimately, given the Supreme Court's broad interpretation of the term, the records at issue here are 'similar files.'

---

justification for nondisclosure." See Halpern v. Fed. Bureau of Investigation, 181 F.3d 279, 290 (2d Cir. 1999); Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973). The government has not done so here, but does not need to since it is asserting a blanket exemption for all special access requests.

12

### B. Disclosure of Certain Portions of the Requested Documents Would Constitute a "Clearly Unwarranted Invasion of Personal Privacy."

Since the Court has determined that the requested records are 'similar files,' it must next "balance the public's need for the information against the individual's privacy interest," Wood, 432 F.3d at 86, to determine whether disclosure would constitute a "clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6) (2012). To make this determination, courts balance the public's interest in disclosure against the individuals' privacy interests. Rose, 425 U.S. at 372; Hopkins v. U.S. Dep't of Hous. & Urban Dev., 929 F.2d 81, 86-87 (2d Cir. 1991).

The privacy side of the balancing test is broad. See Hopkins, 929 at 87. "It encompasses all interests involving the individual's control of information concerning his or her person." Wood, 432 F.3d at 88 (internal citations omitted). The government bears the burden of demonstrating the existence of a substantial privacy interest. Sims v. Central Intelligence Agency, 642 F.2d 562, 573 (D.C. Cir. 1980).

On the other side, the "relevant public interest in the FOIA balancing analysis" is "the extent to which disclosure of the information sought would 'shed light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" Dep't of Defense v.

13

FLRA, 510 U.S. 487, 497 (1994) (quoting Reporter's Comm. for Freedom of Press, 489 U.S. at 773). "That purpose, however, is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." Reporter's Comm. for Freedom of Press, 489 U.S. at 773.

Balancing the public's need for the requested information against the former official's and their designees' privacy interests, the Court finds that disclosure here would constitute a clearly unwarranted invasion of personal privacy.

First, the former President and Vice President's research designees have an obvious privacy interest their names and contact information, which evidently appear on the special access requests. Like the documents protected in Washington Post, 456 U.S. at 600, Simpson, 648 F.2d at 17, and Wood, 432 F.3d at 87 — all of which contained personal identifying information that was unrelated to agency personnel going about their work duties — the documents here fit squarely within Exemption 6's purview to the extent they contain personal identifying information about the designees.

Second, the government has presented a number of compelling arguments demonstrating that former President George W. Bush and Vice President Cheney have a substantial privacy interest in the requested documents. Given that the privacy side of the

14

balancing test encompasses "all interests involving the individual's control of information concerning his or her person," Wood, 432 F.3d at 88 (internal citations omitted), the Court agrees with the government that President Bush and Vice President Cheney have a great privacy interest in "not having the subject about which they think and gather information being involuntarily broadcast to the general public."  Def.'s Mem. Law in Supp. Mot. Summ. J. at 12.  It is evident that researchers have an expectation of confidentiality when they conduct research at NARA facilities, see, e.g., Def.'s Mem. Law in Supp. Mot. Summ. J. at 14-17, and making NARA research requests accessible through FOIA will inevitably have a chilling effect on academic research.  And since the PRA is in part designed to give former Presidents and Vice Presidents a time-limited monopoly on certain information to encourage the preparation of their memoirs, their research in particular has important privacy interests at stake.

The public interest justifications for disclosing the research requests do not outweigh these privacy interests.[3]  The

---

[3] Mr. Cook offered the following two public interest justifications for his FOIA request: (i) "[T]o gain insight into the way in which the former President and Vice President have chosen to shape the public's perception of their time in office, and to provide this insight to the public through online news stories," Compl. ¶ 5, and (ii) to "shed light on how NARA is administering the PRA."  Pl.'s Memo. Law in Supp. Mot. Summ. J. at 1.  The latter justification was not pleaded in the Complaint, and, frankly, appears to be an after-the-fact attempt to shoehorn Plaintiff's request to fit within the existing legal framework in which "[o]fficial information that sheds light on an agency's performance of its statutory duties falls squarely

15

American public stands to gain little from knowing what the former officials are researching during the time period protected by the PRA. In contrast, the invasion of privacy on the former officials and their designees is great.

The government has thus fulfilled its burden of showing a clearly unwarranted invasion of personal privacy, and the public interests that Mr. Cook articulates do not outweigh any privacy interest that the former President and Vice President, and their designees, have in the requested documents.

## CONCLUSION

For the reasons discussed above, the Plaintiff's Motion for Summary Judgment is DENIED, and Defendant's Motion for Summary Judgment is GRANTED. The Clerk of the Court is directed to terminate motions number 7 and 17 on the ECF docket, and to close the case.

**SO ORDERED:**

KEVIN T. DUFFY
UNITED STATES DISTRICT JUDGE

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2-1-13

Dated:   New York, New York
         January 30, 2013

---

within [FOIA's] statutory purpose." Dep't of Defense, 510 U.S. at 495-96. This argument could apply in each and every case — for every decision by NARA gives insight into "how NARA is administering the PRA." Pl.'s Memo. Law in Supp. Mot. Summ. J. at 1.

16